IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GREGORY C. REISING,<br><br>           Plaintiff,<br><br>vs.<br><br>BARB LEWIEN, Warden, Nebraska Department of Corrections; and LINDA LEONARD, Unit Administrator, Community Corrections Omaha;<br><br>           Defendants. | 8:18CV352<br><br>**MEMORANDUM AND ORDER** |

      Plaintiff filed a Complaint on July 23, 2018, while he was a prisoner in the custody of the Nebraska Department of Correctional Services ("NDCS"). (Filing No. 1.) He was given leave to proceed in forma pauperis. (Filing No. 10.) Subsequently, Plaintiff filed a notice of change of address indicating he was no longer incarcerated and paid the remaining balance of his PLRA filing fee. (*See* Filing Nos. 13 & 14; Docket Sheet.) The court now conducts an initial review of Plaintiff's Complaint[1] to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e).

## I. SUMMARY OF COMPLAINT

      Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against Barb Lewien, the Warden of the Omaha Correctional Center ("OCC"), in her official capacity, and Linda Leonard, Unit Administrator of the Omaha Community

---

[1] For purposes of this initial review, the Complaint (filing no. 1) includes Plaintiff's pleadings entitled "Memorandum of Complaint in Support of Lawsuit" (filing no. 4) and "Detail of Events for Clarity" (filing no. 5) which were filed on the same day as the Complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); NECivR 15.1(b) (court may consider pro se litigants' amended pleadings as supplemental to original pleading).

Corrections Center ("CCC"), in her official and individual capacities. Plaintiff alleges violations of his Fourteenth Amendment due process rights and his rights under Neb. Rev. Stat. § 83-4,122(1), (4).[2] (Filing No. 1 at CM/ECF p. 3.)

On July 11, 2015, while confined at the CCC, Plaintiff alleges he was issued Misconduct Report 5XDM for "possession of unauthorized electronic communication device – cell phone" and a cell phone was seized from him as evidence. (*Id*. at CM/ECF pp. 5, 12.) On July 15, 2015, Plaintiff went to "IDC Court," which the court infers to mean the CCC institutional disciplinary committee proceedings, where Leonard "was the one who initiated this action against [him] then sat as the IDC Chairperson and was the decision maker of the outcome of the IDC hearing." (*Id*. at CM/ECF p. 5.)[3] Plaintiff alleges that Leonard failed to disclose the whereabouts of the cell phone evidence prior to the IDC hearing and, instead, told Plaintiff after the hearing that the evidence was mishandled and destroyed. Nearly two years later, Plaintiff learned that the cell phone had not been destroyed and was provided a letter from Lewien informing him that the cell phone evidence had been handed over to Investigator Klassen on March 17, 2017. (*Id*. at CM/ECF pp. 6, 17; Filing No. 5 at CM/ECF p. 1.)[4]

Plaintiff alleges that Leonard's actions violated his due process rights because he was found guilty of Misconduct Report 5XDM and "was forced to remain in prison[,] was not allowed to return to Community Corrections Center and . . . [his] full-time employment at Greater Omaha Packing . . . [a]nd subsequently had [his] parole hearing taken from [him]." (Filing No. 1 at CM/ECF

---

[2] Plaintiff's Complaint references "Neb. Rev. Stat. 84-4,122(1), (4)" which appears to be a typo as such statute does not exist. The court believes Plaintiff intended to refer to Neb. Rev. Stat. § 83-4,122 which relates to prison disciplinary proceedings. (*See* Filing No. 1 at CM/ECF p. 3.)

[3] Spelling and punctuation corrected throughout this Memorandum and Order.

[4] The court notes that Plaintiff refers the court to various "transcripts" in support of his allegations. (*See* Filing No. 1 at CM/ECF pp. 5–7; Filing No. 5 at CM/ECF pp. 1–2.) However, there are no transcripts attached to the Complaint.

p. 5.) As relief, Plaintiff asks for reimbursement of lost wages and "punitive damages [of] $120,000" and "that his Community Custody work release status be restored and recommend that his Parole Hearing status be reinstated." (*Id*.; Filing No. 5 at CM/ECF p. 1.)

Along with his Complaint, Plaintiff also filed a "Memorandum of Complaint in Support of Lawsuit" (hereinafter "Memorandum") (filing no. 4) and a "Detail of Events for Clarity" (filing no. 5). In his Memorandum, Plaintiff complains that inmates are at a disadvantage due to their inability "to create legal documents on a computer and E-File these documents and losing days due to not having mail delivery on Saturdays." (Filing No. 4 at CM/ECF p. 1.) Plaintiff asks the court "to rule that the department provide legal computers to create legal documents and to E-File documents . . . and also rule that the Prison Delivery Rule should be deemed unconstitutional." (*Id.* at CM/ECF p. 2.)

On November 9, 2018, Plaintiff filed a notice of change of address with the court indicating that he had been released from prison. (Filing No. 13.) A check of Plaintiff's records through the NDCS website shows that he was released on discretionary parole on October 31, 2018. *See* https://dcs-inmatesearch.ne.gov/Corrections/COR_input.html (last accessed April 12, 2019).

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

Liberally construed, Plaintiff seeks damages, injunctive relief, and declaratory relief against Lewien, in her official capacity only, and Leonard, in her official and individual capacities, for alleged violations of his Fourteenth Amendment due process rights. For the reasons set forth below, the Complaint fails to state a plausible claim for relief against Defendants.

## A. Mootness

Plaintiff seeks injunctive relief in the form of restoration of his community custody status and parole hearing and access to legal computers in prison. Plaintiff also seeks a declaration that the prison mail rule is unconstitutional. Article III of the Constitution limits federal court jurisdiction to "cases" and "controversies." A case becomes "moot," thus ending jurisdiction, "'when the issues presented are no longer "live" or the parties lack a legally cognizable interest.'" *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)); *see also Beck v. Mo. State High Sch. Activities Ass'n*, 18 F.3d 604, 605 (8th Cir. 1994) (per curiam) (noting that a case is moot when circumstances change to such a degree that "a federal court can no longer grant effective relief"). When a prisoner is released from prison and is no longer subjected to an allegedly unconstitutional policy, the prisoner's claims for declaratory and injunctive relief are moot. *Keeling v. Corr.*, No. CIV 08-5249 PAM/SRN, 2009 WL 2568675, at *2 (D. Minn. Aug. 18, 2009) (citing *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (holding inmates' claims for injunctive relief alleging deliberate indifference to medical needs became moot once inmates were released from prison)). Here, Plaintiff's release from prison moots his requests for injunctive and declaratory relief, and such claims are dismissed as moot.

## B. Sovereign Immunity

Plaintiff seeks damages against Lewien and Leonard in their official capacities. The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446–47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity

5

by Congress. *See, e.g.*, *Egerdahl*, 72 F.3d at 619; *Dover Elevator Co.*, 64 F.3d at 446–47; *Nevels v. Hanlon*, 656 F.2d 372, 377–78 (8th Cir. 1981). Accordingly, the Eleventh Amendment bars Plaintiff's requests for monetary damages against Lewien and Leonard in their official capacities. These claims for relief shall be dismissed.

Sovereign immunity, however, does not bar damages claims against Leonard in her individual capacity. The court, thus, examines Plaintiff's remaining claims against Leonard.

**C. Fourteenth Amendment Due Process Claims**

Liberally construed, Plaintiff claims he had a constitutionally protected liberty interest in maintaining his community custody status, and the revocation of this status based on the IDC hearing where Leonard acted as the decision maker and failed to disclose the cell phone evidence prior to the hearing violated his right to due process. Liberally construed, Plaintiff also claims he had a constitutionally protected liberty interest in his parole hearing, and the loss of his "parole hearing status" based on Leonard's actions in the IDC hearing violated his due process rights.

"The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011)). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)). A plaintiff

6

is entitled to due process only when a protected property or liberty interest is at stake. *See Hopkins v. Saunders*, 199 F.3d 968, 975 (8th Cir. 1999).

### *1. Protected Liberty Interest*

A liberty interest arises under the Due Process Clause when the consequences of the state's actions are "stigmatizing" and "qualitatively different from the punishment characteristically suffered by a person convicted of crime." *Sandin v. Conner*, 515 U.S. 472, 479 n.4 (1995) (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980)). In *Edwards v. Lockhart*, 908 F.2d 299, 301 (8th Cir. 1990), the Eighth Circuit Court of Appeals stated that a liberty interest inherent in the Due Process Clause arises when a person has substantial, albeit conditional, freedom such as when he is on probation or parole. In *Edwards*, the court held that an inmate enrolled in an Arkansas work release program had a protected liberty interest that arose from the Due Process Clause itself because the participant no longer lived in an institution but lived in the community. *Id.* at 302–03. As the Eighth Circuit later acknowledged: "'*Edwards* . . . correctly identifies the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest: it is the fact of release from incarceration.'" *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996) (quoting *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995)). Indeed, other courts have similarly held that the revocation of things like parole, probation, and conditional release programs are protected by the Due Process Clause. *See, e.g.*, *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (revocation of probation status); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (revocation of parole); *see also Harper*, 64 F.3d at 566–67 ("[A] prisoner release program which permits a convict to exist, albeit conditionally, in society on a full-time basis more closely resembles parole or probation than even the more permissive forms of institutional confinement."); *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991) (finding inherent liberty interest in continued placement in supervised release program that allowed convict to live in society).

However, an inmate does not have a constitutionally-protected liberty interest in the possibility of parole. *Adams v. Agniel*, 405 F.3d 643, 645 (8th Cir. 2005) (citing *Greenholtz v. Inmates of Neb. Penal & Corr.*, 442 U.S. 1, 7 (1979)). Further, an inmate has no liberty interest in the possibility of parole if the action was within the original sentence imposed. Put simply, "[t]he general rule . . . is that '[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed.'" *Persechini v. Callaway*, 651 F.3d 802, 808 (8th Cir. 2011) (quoting *Sandin*, 515 U.S. at 480) (second alteration in original).

A state-created liberty interest arises when a statute or regulation imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Wilkinson*, 545 U.S. at 223; *Wolff v. McDonnell*, 418 U.S. 539, 555–58 (1974). A state-created liberty interest also arises when a state's actions will inevitably affect the duration of the sentence. *Sandin*, 515 U.S. at 487.

Here, Plaintiff alleges that prior to being found guilty of Misconduct Report 5XDM, he was housed at CCC and had full-time employment at Greater Omaha Packing. (Filing No. 1 at CM/ECF p. 6.) After being found guilty, he "was forced to remain in prison" and "had [his] parole hearing taken from [him]. (*Id*.) Plaintiff's bare allegation that he lost his parole hearing status is insufficient to establish a protected liberty interest under the Due Process Clause or state law. As set forth above, there is no liberty interest in parole, or even the possibility of parole, arising from the Due Process Clause itself. There is no indication of any action taken outside of the sentence originally imposed upon Plaintiff, or that there has been an increase in his original sentence as a result of Leonard's actions. As alleged, Plaintiff's only hardship was that he may not be paroled, and such a possibility is neither atypical or significant in regular prison life. Moreover, the fact that Plaintiff has since been paroled undercuts any suggestion that he faced an atypical or significant hardship. Thus, Plaintiff has failed to allege a protected liberty interest in his parole hearing status.

Plaintiff also claims a liberty interest in his community custody work release status. Plaintiff's allegations suggest that he had some freedom while on community custody work release status as he alleges he was housed at the Omaha Community Corrections Center, worked outside the center, and had to return to "prison" at OCC after the IDC hearing. However, it is not apparent from the Complaint whether the conditions at CCC were more analogous to probation or parole than to institutional life. *See Callender*, 88 F.3d at 668 (holding prisoner's work release program did not provide the sort of substantial freedom necessary to give rise to a protected liberty interest inherent in the Due Process Clause such that would entitle him to due process of law before program was terminated). Nor can the court discern from Plaintiff's allegations whether the loss of his community custody release status imposed an "atypical or significant hardship" that would give rise to a state-created liberty interest. As such, Plaintiff has failed to set forth sufficient facts to allege that he had a protected liberty interest under the Due Process Clause in maintaining his community custody release status. On its own motion, the court will give Plaintiff an opportunity to amend his Complaint to allege a protected liberty interest.

### *2. Sufficiency of Process Provided*

Even if the court were to conclude that Plaintiff sufficiently alleged a protected liberty interest, the Complaint fails to set forth sufficient facts to allege a procedural due process claim. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court set out the minimal procedural requirements that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to disciplinary segregation, or otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556–72. These safeguards are (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) a written statement by the fact-finder as to the evidence relied on and reasons for the disciplinary action; and (3) a limited right to call witnesses and

present documentary evidence when it would not be unduly hazardous to institutional safety or correctional goals to allow the inmate to do so. *Id.* at 563–66.

Here, Plaintiff does not complain that he was not provided notice of his IDC hearing or that he was not allowed an opportunity to marshal a defense to the charge in Misconduct Report 5XDM. Rather, Plaintiff claims he was denied due process because Leonard (1) initiated the disciplinary action against him and then acted as the decisionmaker and (2) failed to disclose the cell phone evidence prior to the hearing and lied about the cell phone's destruction.[5]

With respect to the alleged impropriety of Leonard's involvement in the disciplinary action, the Eighth Circuit has explained:

---

[5] Plaintiff bases his claims on Neb. Rev. Stat. § 83-4,122(1) and (4) which provides, in relevant part:

> In disciplinary cases which may involve the imposition of disciplinary isolation or the loss of good-time credit, the director shall establish disciplinary procedures consistent with the following principles:
>
> > (1) Any person or persons who initiate a disciplinary charge against an inmate shall not determine the disposition of the charge. . . . ;
> > . . .
> > (4) The person or persons determining the disposition of the charge may also summon to testify any witnesses or other persons with relevant knowledge of the incident. The inmate charged shall be permitted to question any person so summoned and shall be allowed to call witnesses and present documentary evidence in his or her defense when permitting him or her to do so will not be unduly hazardous to institutional safety or correctional goals. The person or persons determining the disposition of charges shall state his, her, or their reasons in writing for refusing to call a witness . . . .

However, it must be recognized that, in assessing Plaintiff's due process claim, "the court's inquiry is not whether the statute and therefore the Constitution is violated but whether the process afforded plaintiff 'satisfied the minimum requirements of the Due Process Clause.'" *Brown v. Frey*, 889 F.2d 159, 166 (8th Cir. 1989) (quoting *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)).

> "[A]n impartial decision-maker is a fundamental requirement of due process . . . fully applicable" in the prison context. [*Wolff*, 418 U.S.] at 592, 94 S.Ct. at 2992 (Marshall, J., concurring). The requirement of a neutral and detached decision-maker must not be impaired, but disqualification is not necessary in every case of claimed bias. *Redding v. Fairmen*, 717 F.2d 1105, 1112 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592, 94 S.Ct. at 2992 (Marshall, J., concurring).

*Malek v. Camp*, 822 F.2d 812, 816 (8th Cir. 1987). Plaintiff alleges that Leonard "initiated" the disciplinary action against him, but there are no facts alleged from which the court can infer what "initiated" means or whether Leonard was personally involved in the investigation or issuance of Misconduct Report 5XDM. Accordingly, Plaintiff has failed to allege a due process violation based on Leonard's involvement in the IDC hearing. The court will give Plaintiff leave to amend his Complaint to state sufficient factual allegations regarding Leonard's personal involvement in his disciplinary action.

Finally, Plaintiff's claim that Leonard failed to disclose the cell phone evidence prior to the hearing and lied about its destruction, as alleged, fails to state a claim for relief "because he has never asserted that presentation of the [phone] to him would have resulted in a different outcome at the disciplinary hearing." *Griffin-Bey v. Bowersox*, 978 F.2d 455, 456 (8th Cir. 1992) (denial of inmate's request at disciplinary hearing to see letter that he allegedly wrote did not violate his due process rights as inmate failed to show letter would have changed outcome of hearing); *see also Estes v. Texas*, 381 U.S. 532, 542–43 (1965) (most claims of due process deprivations require a specific showing of prejudice); *United States v. Hood*, 593 F.2d 293, 296 (8th Cir. 1979) (violation of due process claim requires allegation of prejudice). Rather, Plaintiff's allegations and the exhibits attached to the Complaint indicate Plaintiff was found with the cell phone in his possession on July 11, 2015, in violation of institution rules, and he admitted to having the cell

11

phone. ([Filing No. 1 at CM/ECF pp. 16–17](#).) Thus, the facts, as alleged, fail to state a due process claim based on Leonard's failure to disclose the cell phone's whereabouts. As the court will give Plaintiff leave to file an amended complaint, Plaintiff may amend his claim regarding the cell phone evidence to state plausible allegations of prejudice.

## IV. CONCLUSION

Plaintiff's claims for injunctive and declaratory relief are dismissed as moot in light of his release from prison. Plaintiff's claims for damages against Lewien and Leonard in their official capacities are dismissed as barred by sovereign immunity. As presently alleged, Plaintiff's Complaint fails to state a due process claim against Leonard in her individual capacity. On the court's own motion, Plaintiff shall have 30 days to file an amended Complaint that states a plausible due process claim against Leonard in her individual capacity.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims for injunctive and declaratory relief are dismissed as moot.

2. Plaintiff's claims against Defendants Lewien and Leonard in their official capacities are dismissed as barred by sovereign immunity.

3. Plaintiff shall have until **May 13, 2019**, to file an amended complaint that states a due process claim against Leonard in her individual capacity upon which relief can be granted. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

4. In the event that Plaintiff files an amended complaint, Plaintiff shall restate the allegations of the current Complaint ([filing no. 1](#)) and any new

allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. **Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.**

5. The court reserves the right to conduct further review of Plaintiff's claims pursuant to [28 U.S.C. § 1915(e)](...) in the event he files an amended complaint.

6. The clerk of the court is directed to set a pro se case management deadline using the following text: **May 13, 2019**: check for amended complaint.

7. The clerk's office is directed to remove Defendant Barb Lewien from this action.

8. Plaintiff shall keep the court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal without further notice.

Dated this 12th day of April, 2019.

                                              BY THE COURT:

                                              s/ *Richard G. Kopf*
                                              Senior United States District Judge